HARRY B. BAK, Ex'r of the Estate of Patricia D. Cushing, Deceased, *et al.*, Plaintiffs-Appellants, *v.* BURLINGTON NORTHERN, INC., Defendant-Appellee.

Second District — No. 80-222

Opinion filed February 2, 1981.—Rehearing denied March 18, 1981.

Gerald J. Brooks, of Fawell, James & Brooks, of Naperville, for appellants.

John Newell, Kenneth J. Wysoglad, and Lewis Nixon, all of Chicago, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Patricia D. Cushing (the decedent) died from an overdose of Darvon, a pain-killing drug, nine months after she slipped and fell on the stairs in the railroad station of the defendant, Burlington Northern, Inc. (Burlington). Harry B. Bak, as executor of the estate of the decedent, sued Burlington, alleging negligence in a survival action in count I; and alleging negligence resulting in the ultimate death as an action for wrongful death (Ill. Rev. Stat. 1977, ch. 70, par. 2) in count II. The trial court entered summary judgment against the plaintiff on defendant's motion addressed to count II of the amended complaint and the executor appeals.

In substance the amended complaint alleges that on August 17, 1976, the decedent fell while descending a staircase at a train station owned and operated by the defendant; that the staircase was allowed to deteriorate and fall into disrepair, was inadequately lighted, was without adequate handrails and was cluttered with debris. It was further alleged that one or more of the negligent acts or omissions was "the direct or proximate cause of the severe emotional distress and injuries suffered by Plaintiff's decedent Patricia D. Cushing, and which ultimately led to her death on June 1, 1977."

Burlington filed an answer to the amended complaint consisting of general denials. Depositions were taken and are in the record. Referring to a question whether the decedent's death was a suicide as the coroner's inquest had concluded, the executor testified he disagreed because that result would have been against the decedent's religion "[a]nd she was in such severe pain that there were times when she didn't know how much medication she was taking." The decedent's daughter testified that her mother was in pain before her death. The executor's testimony at the coroner's inquest attached to the record included statements that the decedent had fallen on the steps at Burlington, had injured her leg and that they found out later that she was having trouble with her back with the result that there was surgery for the removal of several discs. He also stated that he had talked with the decedent the night before she died and had been told that she was feeling a little better. He said that she did not appear to be upset over her illness or any other matter. Decedent's son also testified that shortly before her death his mother appeared satisfied with her progress from the back injury and did not suffer from mental depression that he knew of. The toxicologist report showed .9 milligrams percent of Propoxothine, "which is darvon or darvocet," in the blood, considered to be a lethal amount. There was evidence at the inquest that 10 darvocets or 10 darvons would produce a .9 milligrams percent concentration. There was further evidence that as the consequence of the

original fall the decedent had suffered back injuries, a broken ankle, bruises, contusions and severe shock.

The trial court concluded that whether the decedent died as the result of suicide or from a negligent self-administered overdose, either was an independent intervening cause and not a foreseeable result of her fall.

We therefore consider whether the overdose, even though treated as accidental for the purpose of our review of the trial court's judgment, precludes recovery as a matter of law. We conclude that it does not.

We cannot say that on any view of the facts there could be no legally foreseeable causal relationship between decedent's injuries and her death from the overdose of drugs.

■■■ To constitute probable cause an injury "must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act." (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380.) The intervention of a new, independent intervening cause does not necessarily relieve one of responsibility for a negligent act "when the intervening cause of an injury is of such nature as could reasonably have been anticipated, * * *." (*Neering*, at 381.) Thus, for example, it has been uniformly held that negligent treatment by a physician is reasonably foreseeable, and the original tortfeasor is liable for aggravation of the original injury caused by the negligent treatment. (*Chicago City Ry. Co. v. Saxby* (1904), 213 Ill. 274, 277. See generally Annot., 100 A.L.R.2d 808 (1965).) Proximate cause is ordinarily a question of fact and to escape liability a defendant "must demonstrate that the intervening event was unforeseeable as a matter of law." *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 395.

Whether the intervening cause, the overdose considered as accidental, was a natural and probable consequence of defendant's primary acts alleged to have caused the original injury, may be best addressed by analogy to other "second injury" cases. There are a number of cases in which an injured plaintiff's conduct after the first injury has produced an aggravation of the injury or a new injury. In a class of cases characterized as the "crutches" cases, a general rule has evolved that where an injured party nonnegligently is using crutches and falls, the original tort-feasor is liable for those injuries as well. (See generally Annot., 31 A.L.R.3d 1000, 1010-15 (1970); *Devlin v. Chicago City Ry. Co.* (1918), 210 Ill. App. 7, 9 (abstract). See also *Swanson v. Williams & Co.* (1951), 278 App. Div. 477, 106 N.Y.S.2d 61.) Recovery has also been allowed where plaintiff became dizzy because of an original concussion and fell through a window

(*Millman v. United States Mortgage & Title Guaranty Co.* (1938), 121 N.J.L. 28, 36-37, 1 A.2d 265, 269-70); where a plaintiff suffered an eye injury and 15 months later was chopping wood and got a splinter in his eye which necessitated the removal of the organ (*City of Port Arthur v. Wallace* (1943), 141 Tex. 201, 206-07, 171 S.W.2d 480, 483); and where plaintiff suffered a brain concussion and three weeks later fell off a ladder during a dizzy spell (*Eli Witt Cigar & Tobacco Co. v. Matatics* (Fla. 1951), 55 So.2d 549, 551).

■■ Causation, however, is rejected where either the injured party acts negligently or incurs another injury through an instrumentality or activity which is not causally linked to the treatment of the first injury. (See, *e.g.*, *Brown v. New York State Training School for Girls* (1941), 285 N.Y. 37, 40-41, 32 N.E.2d 783, 784.) In *Brown*, the decedent by mistake swallowed a mercury tablet which had not been prescribed for the injury thinking that it was a sedative table which had been prescribed. Here, the Darvon was prescribed as a result of the primary injury. *Brown* was so distinguished by the later New York case of *Swanson v. Williams & Co.* (1951), 278 App. Div. 477, 481, 106 N.Y.S.2d 61, 65-66.

■■ A motion for summary judgment and its supporting documents must be strictly construed and must leave no question of the movant's right to judgment. (*Littrell v. Coats Co.* (1978), 62 Ill. App. 3d 516, 519-20.) Here a material question of fact is raised as to whether the overdose was a negligent act of decedent, a nonnegligent accidental overdose, or a voluntary suicide. Another question for the fact-finder is the ultimate one of whether defendant's alleged primary negligent act was the proximate cause of decedent's death.

The judgment is therefore reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LINDBERG and VAN DEUSEN, JJ., concur.