No. 2--96--0316               

___________________________________________________________________

                              IN THE

                    APPELLATE COURT OF ILLINOIS

                         SECOND DISTRICT               

_________________________________________________________________

COLONIAL INN MOTOR LODGE,        )  Appeal from the Circuit Court

INC., for the Use and            )  of Winnebago County.

Benefit of the Cincinnati        )

Insurance Company,               )

                                 )

     Plaintiff-Appellant,        )  Nos.  93--L--73

                                 )           94--L--394

  v.                             )   

                                 )

GREG GAY,                        )

                                 )

     Defendant-Appellee          )

                                 )  

(Stash O'Neil's/Hard Times,      ) 

Inc., Defendant (Joanne Lubrano )

and Antonio Lubrano, Plaintiffs, )                

v. Colonial Inn Motor Lodge,     )

Defendant and Third-Party        )

Plaintiff and Third-Party        )

Defendant; and Greg Gay,         )

Defendant and Third-Party        )  Honorable

Defendant and Third-Party        )  Ronald L. Pirrello,

Plaintiff)).                     )  Judge, Presiding.     

__________________________________________________________________ 

     

     PRESIDING JUSTICE GEIGER delivered the opinion of the court: 

                                               

     The plaintiff, Colonial Inn Motor Lodge, Inc., on behalf of

its insurance carrier, the Cincinnati Insurance Company, sued Greg

Gay (the defendant) and Stash O'Neil's/Hard Times, Inc. (Stash

O'Neil's), in case No. 93--L--73 for damages from an explosion the

defendant allegedly caused by driving into the plaintiff's

building, the Colonial Inn.  The plaintiff sued the defendant in

negligence and sought recovery against Stash O'Neil's under the

Dramshop Act (235 ILCS 5/6--21 (West 1994)).  In case No. 94--L--

394, Antonio and Joanne Lubrano sued the plaintiff and the

defendant to recover for injuries from the explosion.  The

plaintiff and the defendant sued each other for contribution toward

any damages awarded the Lubranos.  The cases were consolidated for

discovery purposes only. 

     The plaintiff appeals (see 155 Ill. 2d R. 304(a)) a grant of

summary judgment (see 735 ILCS 5/2--1005(c) (West 1994)) for the

defendant in case No. 93--L--73.  The plaintiff argues that the 

defendant owed it a duty of care and that whether the defendant's

negligence caused the plaintiff's damages is a jury issue.  We

agree.  Therefore, we reverse and remand for further proceedings.

     Count I of the plaintiff's second amended complaint alleges

the following.  The Colonial Inn was a "hotel/motel" at 4850 East

State Street in Rockford.  On October 30, 1992, the defendant

caused a vehicle he was driving to come into contact with the

building.  The defendant was negligent in: (a) failing to keep a

proper lookout; (b) failing to apply his brakes so as to avoid

striking the building; and (c) driving his vehicle into the

building.  As a result, the building caught fire and exploded,

causing the plaintiff property damage and lost income.  The

Cincinnati Insurance Company paid the plaintiff under an insurance

policy, and the plaintiff was suing on the insurer's behalf.

     The Lubranos' first amended complaint sought recovery in

negligence against both the plaintiff and the defendant.  Its

allegations against the defendant essentially paralleled those in

count I of the plaintiff's complaint, asserting that his negligent

driving caused the contact that led to the explosion.  Neither the

plaintiff's complaint nor the Lubranos' complaint asserted that the

defendant breached any duty to inspect the accident scene, inform

anyone of the contact, or warn of any resultant danger.

     The defendant moved for summary judgment on both the

plaintiff's complaint and the Lubranos' complaint insofar as each

applied to him.  The defendant argued that, because the explosion

was not a reasonably foreseeable consequence of the slight contact

his car made with the building, he did not owe the plaintiff a

duty.  For the same reason, he maintained, his conduct could not be

considered the proximate cause of the calamity.  The defendant

relied on excerpts from the deposition testimony of himself, Leann

Johnson, and Michael Woodring.

     The defendant's motion referred to yet another negligence suit

that arose from his accident, viz., a 1992 action by Stash O'Neil's

against the defendant and Frank Gay, d/b/a Frank Gay's Marquee. 

There, the complaint as amended alleged that the accident occurred

after the defendant exited Stash O'Neil's and got into his car

behind the restaurant.  Stash O'Neil's asserted both that the

defendant was negligent in causing the initial contact with the

Colonial Inn air-conditioning or heating unit and that he breached

a duty to stop immediately and locate the owner of the damaged

property.  The complaint alleged that had the defendant fulfilled

this duty to warn, he would have discovered that he had severed

certain gas lines.  The complaint also alleged that the explosion

and the fire that followed from the ignition caused the fire

department to close Stash O'Neil's, resulting in lost  business. 

The circuit court dismissed Stash O'Neil's suit for failure to

state a cause of action (see 735 ILCS 5/2--615(a) (West 1992)).

     The plaintiff's response to the defendant's summary judgment

motion relied in part on the arguments the Lubranos made in their

response to the defendant's motion.  The plaintiff also made use of

(and attached) an excerpt from Woodring's deposition testimony.  We 

summarize the relevant deposition testimony.

     The defendant testified that he was backing his car up in the

parking lot immediately before the contact.  Before he started to

back up, he looked into the rearview mirror and saw only the brick

building.  The defendant drove no faster than two miles per hour. 

When he felt a bump, he activated his brakes and again looked into

the rearview mirror, seeing only the brick building and not any

air-conditioning or heating unit protruding therefrom.  The

defendant figured he had caused no damage, so he stayed in his car

and exited the parking lot.  The car suffered very little damage. 

Later that evening, the police told the defendant of the explosion.

     Leann Johnson testified that, on October 30, 1992, she was an

employee of Stash O'Neil's, which is located at 4846 East State

Street in Rockford.  Some time that afternoon, her friend Robert

Reed drove her there so she could get her paycheck.  Reed parked

the car in Stash O'Neil's lot.  As Johnson walked south toward

Stash O'Neil's, she heard something that sounded like "someone

hitting something."  Johnson turned in the direction of the sound

and saw the defendant's car near the west wall of a building. 

Johnson did not see the collision itself.

     Johnson testified that she was not sure how far from the

defendant's car she was when she heard the collision. (Diagrams

that Johnson marked are not in the record on appeal.)  Johnson also

equivocated on how loudly the defendant's car collided with the

air-conditioning or heating unit.  Although she described the sound

as a "bang," she conceded that earlier she accurately said that "

'it wasn't very loud, but it was loud enough that we heard it

good.' "  The defendant's vehicle was stationary for a short time

and drove off.  At some point after she heard the collision,

Johnson saw a dent in the "air-conditioning thing, the little thing

that's hanging outside," this unit being about 12 to 15 inches high

and perhaps 20 inches wide.  Johnson did not recall how big or deep

the dent was or exactly where it was on the face of the unit. 

Johnson never saw the unit move, never saw anything fall away from

the unit, and observed no damage to the defendant's car.  She

entered Stash O'Neil's to get her check and left roughly 15 minutes

after she heard the collision.  She did not see the explosion.

     Michael Woodring, a fire investigator for the City of

Rockford, gave his opinion of what caused the explosion.  Woodring

believed that, because the air-conditioning or heating unit

protruded from the wall and apparently overhung the lot, it could

be hit by a car that stayed within the parking lot--as, to the best

of Woodring's knowledge, the defendant's car did.  The collision

caused a break in the gas line, which in turn made gas collect and

flow until it made contact with an ignition source.  Woodring

explained that normally some time passes between breakage to a gas

line and a resultant fire.  Here, the ignition source could have

been the pilot light on one of the large dryers in the hotel's

laundry room.  According to a deposition excerpt the plaintiff

attached to its response to the summary judgment motion, Woodring

opined that the gas accumulated in room 101 of the hotel, escaped,

and eventually made contact with the ignition source, a pilot light

in the hotel basement's washer/dryer system.

     The trial court granted the defendant's motion.  The court's

letter opinion defined the pivotal issue as "whether or not there

was a duty on the part of Defendant Gay to do something which he

subsequently failed to do.  The duty which is expressed is one to

warn Colonial Inn or someone of the possible damage of an explosion

which subsequently occurred."  The letter opinion then stated that,

because the defendant had been driving very slowly and the impact

was slight, it was impossible to say whether any damage would have

been visible to the exterior of the air-conditioning/heating unit

he struck.  Also, because the unit was so low off the ground, the

defendant was unaware even that he struck it.  Thus, the court

reasoned, the danger of a gas explosion involving (as yet unknown)

collection and ignition points was not reasonably foreseeable and 

the defendant was entitled to summary judgment.

     The plaintiff moved to reconsider.  Relying in large measure

on Leann Johnson's deposition testimony, the plaintiff argued that,

given the force of the contact (as shown by the sound it made and

the dent that it left), the resultant harm was reasonably

foreseeable.  Therefore, the defendant owed the plaintiff a duty to

exit his car, look for damage, and tell one of the plaintiff's

agents what had happened.  The plaintiff argued that, had the

defendant inspected the scene, he would have noticed the damage and 

realized he needed to alert the plaintiff.

     At the hearing on the motion to reconsider, the plaintiff's

lawyer stated that counsel had finally managed to contact Robert

Reed and had sent Reed an affidavit that Reed signed and returned

but did not get notarized.  Counsel requested that the court

consider the Reed affidavit and stated he would get it notarized. 

The defendant's counsel received a copy of the affidavit and said

he had not seen it before.  However, after the plaintiff's attorney

requested "mov[ing] forward with argument right now," the

defendant's attorney said he had "no objection to proceeding with

argument, and we can consider those facts with the understanding

that there is an original affidavit somewhere that will be

notarized and--and submitted to the court record."

     Argument commenced.  The plaintiff's attorney asserted that

Reed's affidavit tended to show that the explosion was a reasonably

foreseeable consequence of the collision.  The trial judge

interjected that he did not have a copy of the affidavit.  The

plaintiff's counsel quoted from the affidavit and completed his

argument, urging that the defendant breached his duties "to not hit

other people's property" and to notify someone of the collision. 

Counsel continued that there was a genuine issue of fact whether

the defendant's conduct proximately caused the explosion.

     After further argument, the trial judge stated that the

arguments here were essentially those raised before the original

ruling.  The court denied the motion to reconsider and stated there

was no just reason to delay the enforcement or appeal of its order

(see 155 Ill. 2d R. 304(a)).  The plaintiff timely appealed. 

     On appeal, the plaintiff argues that (1) the court erred in

concluding the defendant owed no duty to the plaintiff and (2)

whether the defendant's conduct proximately caused the explosion

cannot be decided as a matter of law.  Both arguments hinge on the

plaintiff's assertion that the trial court misapplied the concept

of "reasonable foreseeability" that underlies both duty and

proximate cause.  The defendant responds that he is entitled to

summary judgment on either ground because the explosion was not a

reasonably foreseeable consequence of his conduct.

     Before delving into the merits, we address whether to consider

the affidavit of Robert Reed in deciding whether summary judgment

was proper.  We decline to do so.  Although the record is

admittedly less than clear, it shows that the plaintiff did not

even proffer Reed's affidavit until after it moved to reconsider

the grant of summary judgment.  When the plaintiff sought to rely

in part on Reed's affidavit, the court had not yet been presented

with a copy; from the transcript of the hearing on the motion to

reconsider, we conclude that the judge did not have the affidavit

before him when he heard arguments.  Moreover, the affidavit had

not yet been notarized.  It appears from the judge's explanation of

his decision that he did not consider the Reed affidavit.  Under

all the circumstances, we decline to consider evidence which was

not in proper form, was not submitted and could not have been

considered until after the grant of summary judgment, and appears

not to have been before the trial judge.  See Rayner Covering

Systems, Inc. v. Danvers Farmers Elevator Co., 226 Ill. App. 3d

507, 510-11 (1992) (party may not expect trial court to consider

evidence not introduced until motion to reconsider summary

judgment).  In any event, we do not believe our holding would

differ significantly were we to factor in the Reed affidavit.

     Whether the court erred in granting summary judgment is a

question of law that we review de novo.  In re Estate of Hoover,

155 Ill. 2d 402, 410-11 (1993).  Summary judgment is proper if the

pleadings, depositions, and other matters on file show that there

is no genuine issue of material fact and that the movant is

entitled to judgment as a matter of law.  735 ILCS 5/2--

1005(c)(West 1994).  A court should not grant summary judgment

unless the movant's right to it is clear and free from doubt, and

the court must construe the evidence strictly against the movant

and liberally in favor of the nonmovant.  Colvin v. Hobart

Brothers, 156 Ill. 2d 166, 170 (1993).  The nonmovant need not

prove his case at this stage, but he must present some factual

basis that would arguably entitle him to judgment.  Smith v. Tri-R

Vending, 249 Ill. App. 3d 654, 657 (1993).   

     In a negligence action, the plaintiff must plead and prove (1)

the existence of a duty owed by the defendant to the plaintiff; (2)

the breach of that duty; and (3) an injury proximately caused by

that breach.  Ziemba v. Mierzwa, 142 Ill. 2d 42, 45 (1991);  Ward

v. K Mart Corp., 136 Ill. 2d 132, 140 (1990).  Here, the parties

dispute whether there is a genuine factual issue as to both the

first element, duty, and the third element, proximate cause. 

     We consider the duty issue first.  The parties and the trial

court appear to have intermingled two possible duties or breaches

thereof--(1) the defendant's duty to drive safely to avoid

colliding  with the building and (2) the defendant's alleged duty

to warn or inform the plaintiff after the collision.  However, we

shall consider only the first of these possible duties because 

nothing in the plaintiff's complaint alleges that the defendant had

a duty to warn or inform the plaintiff of the accident.  The only

duty alleged in that complaint, or in the Lubranos' complaint as it

relates to the defendant, is the defendant's duty to use due care

to avoid the collision.  As far as we can tell from the record, the

plaintiff waited until its motion to reconsider the judgment to 

assert that there was any duty to warn.  (It appears the only time

before the judgment that a party here even obliquely mentioned a

possible duty to warn was when the defendant's motion for summary

judgment attached a copy of Stash O'Neil's' complaint, which does

assert that the defendant owed such a duty to the plaintiff.)  

     The plaintiff never properly pleaded the existence of a duty

to warn.  The defendant could not contest the existence of this

duty by way of his motion for summary judgment.  The plaintiff  may

not recover under a theory never set forth in its complaint, for,

as we have stated, proof without pleadings is as defective as

pleadings without proof.  Estate of Welliver v. Alberts, 278 Ill.

App. 3d 1028, 1040 (1996).  Thus, we consider whether the defendant

had a duty to avoid the collision but not whether he had any duty

to inform the plaintiff afterward.  We conclude that the defendant

owed the plaintiff a duty of due care to avoid the initial contact.

     The existence of a duty is a question of law and depends on

whether the defendant and the plaintiff stood in such a

relationship that the defendant is obliged to conform to a certain

standard of conduct for the benefit of the plaintiff.  Ziemba, 142

Ill. 2d at 47;  Widlowski v. Durkee Foods, 138 Ill. 2d 369, 373

(1990).  To decide whether a duty exists in a particular case, a

court considers the foreseeability that the defendant's conduct may

injure another, the likelihood of an injury resulting, the burden

to the defendant of imposing a duty, and the consequences of

imposing this burden.  Lee v. Chicago Transit Authority, 152 Ill.

2d 432, 452-53 (1992).   

     In finding that the defendant did not owe the plaintiff a

duty, the trial court relied on its conclusion that the explosion

was not a reasonably foreseeable consequence of the contact between

the car and the building.  Although reasonable foreseeability is an

important consideration in the duty equation, we believe that the

trial court erred by using as its touchstone the foreseeability of

the particular injury or damages rather than the foreseeability of

an injury to the particular plaintiff.  We believe the latter is

crucial to the legal determination of duty, while the former is

more appropriately considered in determining the factual issue of

proximate causation.  True, the case law is less than perfectly

lucid or consistent in its treatment of the densely intertwined

ideas of duty, proximate causation, and reasonable foreseeability. 

However, it appears that, because duty is based on the relationship

of the plaintiff and the defendant, that relationship, and not the

type of injury that resulted, is crucial.

     Illinois courts have on the whole supported this view. 

Although "reasonable foreseeability" is crucial to both duty and

proximate cause, courts must take care to keep duty and proximate

cause analytically independent by differentiating between "two

distinct problems in negligence theory--the unforeseen plaintiff

problem and the problem of the foreseeable injury resulting from

unforeseen means."  Nelson v. Commonwealth Edison Co., 124 Ill.

App. 3d 655, 660 (1984).  This approach is consistent with the

long-standing principle that the particular manner or method by

which the plaintiff is injured is generally not germane to the

determination of the existence of a duty.  See Nelson, 124 Ill.

App. 3d at 660-63 (and cases cited therein).  The general standards

we have recited focus on the preaccident relationship between the

parties and the foreseeability of an injury to the particular

plaintiff, not on the foreseeability of the actual injury or the

specific means by which it was brought about.  This is true even

where courts have declined to impose a duty because certain

"freakish" or "fantastic" injuries could not reasonably have been

foreseen.  In each case, what was "unforeseeable" was not merely

the particular injury, but the initial contact--the fact of injury

to the particular plaintiff.

     Thus, in Cunis v. Brennan, 56 Ill. 2d 372 (1974), the

plaintiff, a passenger in a car, was injured when a collision with

another car threw him 30 feet onto a parkway, where he was impaled

on part of a drain pipe allegedly left there as a result of the

defendant municipality's negligence.  The supreme court held that

the municipality owed the plaintiff no duty of due care. 

Emphasizing the importance of analyzing the parties' relationship 

(Cunis, 56 Ill. 2d at 374), the court concluded that it was not

reasonably foreseeable the alleged negligence should have brought

about the plaintiff's injury.  Although the court observed that the

particular injury was not reasonably foreseeable, it also stressed

that the initial contact--and thus any injury to the particular

plaintiff from the protruding drain pipe--was  "tragically

bizarre."  Cunis, 56 Ill. 2d at 377.  The "remote possibility of

the occurrence" did not give rise to a duty from the municipality

to the plaintiff.  Cunis, 56 Ill. 2d at 377-78.  

     Cunis did not present a situation where the particular

plaintiff or his initial contact with the defendant was reasonably

foreseeable but the ultimate injury or damages were arguably not

so.  Rather, that the misplaced drain pipe would cause any injury

to someone riding in a car 30 feet away was an example of " 'the

freakish and the fantastic.' "  Cunis, 56 Ill. 2d at 378, quoting

W. Prosser, Palsgraf Revisited, 52 Mich. L. Rev. 1, 27 (1953).

     In Widlowski, the plaintiff, a nurse, alleged that the

defendant's employee was made delirious by nitrogen gas to which he

was exposed on the job; as a result, he was transported to the

hospital, where his delirium caused him to bite off the plaintiff's

finger.  Refusing to find that the employer owed the plaintiff a

duty, the supreme court explained that it could not say that "the

risk of harm to [the] plaintiff, who was removed in time and place,

was reasonably foreseeable."  Widlowski, 138 Ill. 2d at 374.  The

court also explained that the likelihood of the initial harmful

contact (the bite) was small and that the burden of guarding

against such an occurrence was great because the employee could

have harmed anyone with whom he came into contact while he was

delirious.  Widlowski, 138 Ill. 2d at 374-75.

     In Ziemba, the plaintiff was riding a bicycle on a road when

he was hit by a truck exiting the defendant's driveway.  The

supreme court refused to find that the defendant owed the plaintiff

a duty to keep his driveway from being obscured by foliage. 

Emphasizing the importance of the relationship between the parties

in its duty inquiry (Ziemba, 142 Ill. 2d at 48), the court

explained that it was not reasonably foreseeable that the alleged

breach of duty would result in "this type of accident" (Ziemba, 142

Ill. 2d at 49).  The court noted further that the obscured driveway

posed a danger to the plaintiff only because of the truck driver's

intervening negligent act.  Ziemba, 142 Ill. 2d at 49-50.  Thus,

Ziemba is consistent with the rule that there is no duty when the

plaintiff is not reasonably foreseeable.  

     Cases from other jurisdictions the defendant cites also

demonstrate that, where "unforeseeability" bars the imposition of

a duty, both the particular injury and the particular plaintiff

(i.e., the initial contact with the plaintiff) are "unforeseeable." 

See Diamond State Telephone Co. v. Atlantic Refining Co., 205 F.2d

402 (3d Cir. 1953);  Palsgraf v. Long Island R.R. Co., 248 N.Y.

339, 162 N.E. 99 (1928); Radigan v. W.J. Halloran Co., 196 A.2d 160

(R.I. 1963).

     We believe that the relationship of the parties here was such

that the law could require the defendant to exercise due care on

behalf of the plaintiff.  Focusing on the potential for injury

rather than on the specifics of the harm that did occur, we find

the duty problem is relatively simple.  The defendant was a

motorist operating his vehicle in the vicinity of the plaintiff's

building.  He had an obligation to use due care to avoid driving

his car into the building.  The building was not remote in time or

space from the defendant (apparently it was all too close); the

collision itself was a simple result of the defendant's action and

had no intervening causes like the independent negligent acts of

the motorists in Cunis or Ziemba; and the specific types of duty

the complaint alleges--to keep a proper lookout, to apply brakes

when necessary, and generally to take care to avoid an accident--

are anything but unusual.  

     This is not a case involving an unforeseeable plaintiff, and

we find no policy considerations that would negate the ordinary and

routine duty of a motorist to drive his car carefully so as not to

cause other parties injury or property damage.  The court erred in

holding that the defendant owed the plaintiff no duty.  Whether the

unusual facts here absolve the defendant of liability is something

we now  address under the rubric of proximate cause.

     The plaintiff argues that proximate cause is a jury question

because there is a genuine issue of whether the damage to the

building was the natural and probable consequence of the

defendant's careless driving.  The plaintiff maintains that there

is at least some evidence that the defendant's car struck the air-

conditioning or heating unit with great force.  Thus, the plaintiff

asserts, the explosion was not inherently unforeseeable and

proximate cause should not be decided as a matter of law.  The

defendant responds that the explosion was too bizarre to be a

natural and probable consequence of slowly backing a car into the 

building.  We conclude that the evidence on the issue is not so

one-sided that it entitles the defendant to summary judgment.

     Whether an injury proximately resulted from the defendant's

breach of a duty is ordinarily a question of fact.  Lee, 152 Ill.

2d at 454; Ward, 136 Ill. 2d at 156-57.  Proximate cause consists

of (1) cause in fact--whether there is a reasonable certainty that

the defendant's actions caused the injury--and (2) legal cause--

whether the injury was of a type that was a reasonably foreseeable

result of the defendant's conduct.  Lee, 152 Ill. 2d at 455-56;

Yager v. Illinois Bell Telephone Co., 281 Ill. App. 3d 903, 909

(1996).  We agree with the plaintiff that the expert testimony of

the fire investigator and the fact of the collision itself provide

an evidentiary basis for cause in fact.  The more difficult issue

is whether the plaintiff set forth a sufficient factual basis that

the injury was reasonably foreseeable.  We believe it did so.

     We cannot say as a matter of law that it was not reasonably

foreseeable that a collision between an automobile and the side of

a building could cause the sort of injury here.  Construing the

evidence liberally in favor of the plaintiff, we see some basis to

conclude that the impact was substantial.  The sound made a person

some distance off shift her attention toward the defendant. 

Moreover, even a slow-moving car is a large instrumentality capable

of causing significant harm.  The possibility that colliding with

a building will disrupt a gas line or create a fire hazard is not

so inherently farfetched as to merit the label "freakish" or

"fantastic."  Gas lines and ignition sources such as appliances are

common features of buildings, including large buildings used for

residential purposes.    Importantly, this case does not involve

the intervention of an unforeseeable third party as an intervening

or additional cause.  It is at least fairly arguable that, once the

defendant's car hit the plaintiff's building, the sequence of

events that caused the explosion was set in motion with no further

action needed to bring about the injury. 

     Illinois courts are reluctant to deny liability where an

injury is merely indirect or surprising, even if an actor other

than the defendant helps to bring about the accident.  Thus, in

Davis v. Marathon Oil Co., 64 Ill. 2d 380 (1976), the court upheld

a verdict for the plaintiff, who was injured by a gasoline

explosion at the defendant's service station.  The plaintiff, who

was on the property to deliver gasoline, alleged that the

defendant's negligent storage of the gasoline caused an explosion

that occurred when the plaintiff exited the sales area, saw that

gasoline he had pumped was flowing onto the ground, and was injured

by the explosion as he tried to shut off his truck's pump.  The

supreme court held that the jury could conclude the negligent

storage of the gasoline proximately caused the plaintiff's injury

even though the explosion also required the presence, in the sales

area, of a space heater that ignited the fumes when a breeze blew

them into the structure as the plaintiff opened the door.  Davis,

64 Ill. 2d at 395-96.

     In Bak v. Burlington Northern, Inc., 93 Ill. App. 3d 269

(1981), this court reversed summary judgment for the defendant on

one count of a complaint that alleged that the plaintiff's

decedent's death from an overdose of a painkilling drug was

proximately caused by the defendant's negligent maintenance of its

staircase.  The plaintiff alleged that the defendant's negligence

caused the plaintiff's decedent serious injuries, without which she

would not have been taking the drug at all.  Nine months passed

between the accident and the decedent's overdose.  This court held

that the passage of time and the decedent's act of taking the

overdose did not mean that, as a matter of law, the defendant's

negligence did not proximately cause her death.  Bak, 93 Ill. App.

3d at 271-72.

     In Mangan v. F.C. Pilgrim & Co., 32 Ill. App. 3d 563 (1975),

the jury found that the defendant landlord's negligent upkeep of

its apartment building proximately caused injuries to the

plaintiff, a tenant who fell and was injured when a mouse jumped

out of her oven.  The appellate court affirmed, explaining that the

landlord could reasonably foresee that the unexpected presence of

mice on the property could startle the plaintiff into having her

accident.  Mangan, 32 Ill. App. 3d at 570.  

     As these cases illustrate, a "natural and probable" 

consequence need not be "easily predictable" or "highly probable."

Neither a high degree of contingency nor a substantial lapse of

time between the negligent act and the injury establishes as a

matter of law that the former did not proximately cause the latter. 

     If the defendant's conduct is a substantial factor in bringing

about the injury, it is not necessary that the extent of the harm

or the exact manner in which it occurred could reasonably have been

foreseen.  Blue v. St. Clair Country Club, 7 Ill. 2d 359, 364

(1955); Jefferson v. City of Chicago, 269 Ill. App. 3d 672, 676

(1995); Mangan, 32 Ill. App. 3d at 570; Restatement (Second) of

Torts §435(1)(1965).  A negligence defendant must take the

plaintiff as he finds him, even if the plaintiff's "eggshell skull"

results in his suffering an injury that ordinarily would not be

reasonably foreseeable.  W. Keeton, Prosser & Keeton on Torts §43,

at 291-92 (5th  ed. 1984).  Here, the evidence suggests that a

building rather than a person may have had an "eggshell skull."

That possibility alone does not foreclose liability for the injury.

     The judgment of the circuit court of Winnebago County is

reversed, and the cause is remanded for further proceedings.

     Reversed and remanded.

     INGLIS and HUTCHINSON, JJ., concur.